### D. Shulenburg *v.* Henry Wessels.

Although a foreign seaman, while his contract with the master of a vessel remains unrescinded, will be bound by a stipulation contained therein not to sue in any country but his own; yet a breach of contract by the master, which terminates the contract and discharges the seaman from his connection with the vessel without fault on his part, will also release him from such stipulation, and enable him to maintain an action for his wages in the courts of this state.

By the articles of agreement, signed by a seaman at Bremen, he bound himself to a certain ship from that port to New York, and from there back again, "or any other place, to which our destination may be, or our future voyages may be directed." The vessel sailed to New York, and thence to Buenos Ayres. She then returned to this port, and was preparing to proceed again to South America, when the seaman procured his discharge under a writ of *habeas corpus*, and sued the master for his wages. *Held*, that the plaintiff was entitled to recover, and that the contract was ended by the determination to renew the voyage to Buenos Ayres.

This action was brought by the plaintiff for services as a seaman on board a Bremen vessel, of which the defendant was master. The vessel sailed to New York, and thence to

Buenos Ayres. · She then returned to this port, and preparations were making to proceed again to South America, when the seaman procured his discharge under a writ of *habeas corpus*, issued by a judge of one of our courts. He had previously applied to the Bremen consul residing in this city, who decided that he must accompany the ship on her projected voyage.

The provisions in the articles of agreement, signed by the plaintiff in Bremen, so far as they are material, are given in the opinion of DALY, J., where the points raised in the case are also stated.

*W. R. Beebe* and *Charles Donohue,* for the defendant.

*Abraham D. Russel,* for the plaintiff.

DALY, J.—Two grounds of defence are taken to this action : *First.* That the voyage was not at an end when the plaintiff left the vessel. *Second.* That he bound himself by the shipping articles not to sue for his wages in a foreign port. The plaintiff signed the shipping articles in Bremen, and agreed to go from there to New York, and from thence to Bremen, " *or any other place,*" in the language of the articles, " *to which our destination may be, or our future voyages may be directed.*" This is not to be understood as binding him to serve on board the vessel for as long a time or for as many voyages as the master or owners might think fit. Such a construction would be unreasonable, and is not to be assumed in respect to such a contract, unless it appears unmistakably by the words of the contract that such was the intention of the parties. A voyage from Bremen to New York, and from thence to Buenos Ayres and back again to New York, and thence to Bremen, is undoubtedly within the meaning of the contract. But for the vessel to go back again to Buenos Ayres after her return to New York, would be a departure, and the seamen would be entitled to leave the ship and claim their wages. Such is the present case.

When the plaintiff applied for and obtained his discharge, upon the *habeas corpus*, the vessel was about to return to Buenos Ayres. The master, upon his examination, admitted that she was then bound to that port. I will not say how far the circumstance of the port of Bremen being in a state of blockade at the time when the second voyage was determined on, would justify the employment of the vessel in making voyages to other ports, and render it obligatory upon the seamen to serve on board of her until, by the removal of the blockade, a return to Bremen was practicable and possible. But there is no evidence in the case to show that the blockade was then subsisting, or that it was still existing when the last intelligence came from Bremen to New York. From all that appears in the case, it might have been removed, and in the power of the master to return with the vessel. I think, therefore, that the determination to return to Buenos Ayres was a departure, and as respects the rights of the plaintiff, put an end to the voyage. (*Veacock* v. *McCall*, Gilpin, 329; *Douglas* v. *Eyre*, Id. 147; *Moran* v. *Bandin*, 2 Pet. Adm. 415; *Willinsden* v. *The Försöket*, Id. 127; *Potter* v. *Allen*, 2 Root, 63; 2 Gallis. 447; 1 Conk. Adm. 113 to 121; 1 Hagg. Adm. 347, 370.)

The stipulation in the shipping articles, that the plaintiff would not sue for wages in a foreign port, cannot be construed as depriving him of the right to maintain an action for them in a foreign port, where the voyage, as respects him, is put an end to in that port, and by no act on his part. (*Weibury* v. *The St. Oloff*, 2 Pet. Adm. 415.) In that case, the plaintiff, a Swedish seaman, applied for his discharge and for the recovery of his wages, there having been a departure from the voyage, and upon the ground of cruel treatment; and although it appeared that Swedish mariners were forbidden by the laws of that country to sue for redress in any place subject to a foreign government, the seaman was discharged, and the claim for wages sustained. In *Geinar* v. *Meyer*, 2 H. Bl. 603, the plaintiff, who was a Dutch seaman, bound himself by the articles entered into at Rotter-

Shulenburg *v.* Wessels.

dam, not to institute any suit against the master in foreign countries, and it was held that he could not maintain an action against the master for wages. In that case the vessel had been confiscated in England, and it was conceded by the court that no persons in England could, by agreement, exclude themselves from the jurisdiction of the King's Court, and that a personal action follows the person; but the decision was mainly put upon the ground of the intolerable hardship to which the captain, deprived of the vessel, would be put, in a foreign country, if he was held liable for the wages of the seamen. "The effect," said Chief Justice Eyre, "might be to cause him to lie in a foreign gaol, perhaps for life," and the court therefore held, that as the seamen had an ample remedy against the owners, that should pursue it in the country where the parties are domiciled. In the present case, however, the master was in possession of the vessel, and could be subjected to no such hardship. Having the property of the owners under his control, he was furnished with the means of providing for the consequences, if held personally responsible for the payment of the plaintiff's wages. At all events, this case is distinguishable, in the circumstance that the voyage, and, consequently, the contract, were put an end to by the deliberate act of the master, and not, as in *Geinar* v. *Meyer*, by an act over which he had no control.

WOODRUFF, J.—I am not satisfied that any rule of public policy forbids the making of a contract by seamen not to prosecute suits against their vessel or the master in foreign countries, and in this respect I concur with the authority of *Geinar* v. *Meyer*, 2 H. Bl. 603; and while the contract between the seamen and master is in force, I should be disposed to sustain such a stipulation.

But here the contract has been put an end to by the master—acting voluntarily—and against the will of the seaman. Under such a state of things, the plaintiff has a right to allege and claim a full exoneration from the stipulations contained

in the contract on his part, and declare the contract at an end for all purposes.

Such was not the case in *Geinar* v. *Meyer*. There, although the voyage was ended, it had terminated by the act of a superior power, to wit, a capture by a public enemy and confiscation in the enemy's country. The master was in no fault, and the claim of the seaman was not urged upon the ground that the master had broken his contract, but because the voyage was ended and the wages therefor due. To such a claim it might be said, although the voyage is ended, it is brought to an end without the fault of either party, and by means for which neither is responsible; the other provisions of the contract, therefore, remain in full force between the parties.

But where there is a willful breach of the contract, in a particular going to the subversion of the design and purpose had in view by the plaintiff in entering into the contract, so as to warrant the plaintiff in terminating his engagement, and claiming to be absolved from his obligation to perform the contract further, I perceive no reason for saying that *some* of the stipulations still bind him.

So long as the contract remains a valid, binding contract, the stipulation, not to sue in foreign courts for misconduct of the master or for such breaches of contract as do not go to the dissolution of the contract or discharge the plaintiff from its provisions, may bind the plaintiff. But where the contract itself has been put an end to by the willful act of the master, so as to discharge the contract upon which the plaintiff shipped, it seems to me he ought to be deemed, upon the same ground, relieved from his stipulation not to sue here.

If it be proper at all to regard the hardship of the case in our endeavor to find the true construction of the contract and the intent of the parties, I may add, that it would be an intolerable hardship upon seamen, if, under such an agreement as the present, the master might be guilty of whatever breach of the contract, on his part, his bad faith or caprice might prompt—even to discharging the seamen without

cause, in a foreign country—and then say to them, though strangers, destitute, and friendless, with no means of returning to their own land, "You agreed to sue me *only there*, and there you must go, before I will pay your just dues."

I think the plaintiff should have judgment.

Judgment for the plaintiff.